IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BILLY G. ASEMANI, : | | CIVIL ACTION |
| Plaintiff, : | | |
| : | | |
| v. : | | |
| : | | |
| SECRETARY OF THE DEPARTMENT : | | |
| OF HOMELAND SECURITY, : | | NO. 11-cv-7448 |
| Defendant. : | | |

MEMORANDUM ORDER

AND NOW, this 22nd day of February, 2012, upon consideration of (1) Plaintiff's Motion for Appointment of Counsel (Doc. No. 7) and (2) Plaintiff's Application to Proceed IFP (Doc. No. 8), it is hereby ORDERED as follows:

1. Plaintiff's Motion for Appointment of Counsel (Doc. No. 7) is DENIED.

2. Plaintiff's Application to Proceed IFP (Doc. No. 8) is DENIED AS MOOT, as we have already granted Plaintiff's previous IFP motion. (See Doc. No. 4).

Plaintiff Billy G. Asemani, an inmate proceeding *in forma pauperis* (IFP), brought this 42 U.S.C. § 1983 action against the Secretary of the Department of Homeland Security ("DHS"). Asemani's Complaint alleges that DHS's refusal to recognize Asemani as a U.S. National, even though a federal court previously declared that he has "demonstrated his permanent allegiance to the United States sufficient to constitute him a 'national' within the meaning of" the Foreign Sovereign Immunities Act ("FSIA"), see Asemani v. Islamic Republic of Iran, 266 F. Supp. 2d

1

24, 26-27 (D.D.C. 2003), violates his Equal Protection rights because the state correctional institution to which he is confined will not lower his security level / status as long as Asemani is subject to an "immigration detainer." (See Doc. No. 5).

Asemani asks us to appoint counsel to represent him in this civil action pursuant to 28 U.S.C. § 1915(e)(1). An "indigent civil litigant has neither a constitutional nor a statutory right to counsel." Woodham v. Sayre Borough Police Dept., 191 Fed. App'x 111, 114 (3d Cir. 2006). However, Section 1915 provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). District courts have "broad discretion to determine whether appointment of counsel is warranted." Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993). In Tabron, the Third Circuit articulated a two-step framework to guide district courts in deciding whether to appoint counsel under Section 1915. First, as a threshold matter, a court should not appoint counsel unless it appears that the requesting plaintiff's claim has some merit in fact and law. Tabron, 6 F.3d at 155. Once the plaintiff clears this hurdle, a court should then consider the following six (6) factors in analyzing the appointment of counsel question. None of the factors alone is dispositive, and the list is non-exhaustive:

1. Plaintiff's ability to present his or her own case;
2. The complexity of the legal issues;
3. The degree to which factual investigation will be necessary, and the ability of the plaintiff to pursue such investigation;
4. The amount a case is likely to turn on credibility determinations;
5. Whether the case will require expert witness testimony; and
6. Whether the plaintiff can attain and afford counsel on his or her own behalf.

Tabron, 6 F.3d at 156-57. Here, we will not yet speculate on whether Asemani's claims have "some merit in fact and law." The Defendant has not even answered the Complaint. However, as detailed below, after applying the six Tabron factors, we conclude that appointment of counsel

is not warranted in this matter regardless of the merit of Asemani's claim.

A.  Asemani Can Capably Present His Own Case

The plaintiff's ability to present his own case is perhaps the most significant of the Tabron factors.  Montgomery v. Pinchak, 294 F.3d 492, 501 (3d Cir. 2002).  In determining whether the plaintiff can ably represent himself, we consider the plaintiff's education, literacy, prior work experience, prior litigation experience, ability to understand English, and the restraints placed on him by incarceration.  See Tabron, 6 F.3d at 156.  Of course, the fact that an indigent party lacks a trial lawyer's skills does not mean we should grant his request for counsel.  See Gordon v. Gonzalez, 232 Fed. App'x 153, 157 (3d Cir. 2007) (noting that plaintiff's "reading of this factor seems to suggest that it will always weigh in the indigent party's favor unless that party is a trial lawyer. We hesitate to extend Tabron and its progeny in such a manner.").

Here, we have no doubt that Asemani can capably represent himself in this matter.  For example, Asemani's Complaint contains numerous citations to case law from around the country.  Additionally, Asemani has extensive litigation experience.  A review of court dockets nationwide shows that Asemani has filed approximately eighty (80) civil lawsuits in federal district courts and participated in approximately fifty (50) matters before the federal courts of appeal.  Further, the United States Supreme Court recently took the extraordinary step of restricting Asemani's access to the Court for repeatedly abusing its process.  Asemani v. Chronister, 130 S. Ct. 3479, 3479 (2010) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1.").  These facts strongly support the proposition that Asemani can ably present his own case.  See Knauss v.

U.S. Dept. of Justice, Civil Action No. 10–cv–02636, 2011 WL 1315677, at *1-2 (E.D. Pa. Mar. 31, 2011) (denying plaintiff's request for counsel because "[p]laintiff has experience with federal court litigation, having previously litigated a Section 1983 action before this Court" and "it is clear from Plaintiff's legal filings that he is capable of researching the law and advancing coherent legal arguments.").

B.  The Legal Issues May Become Complex, But It Is Too Soon To Tell[1]

In essence, Asemani claims that his immigration detainer violates his Equal Protection rights because "[n]o other similarly situated U.S. national has an immigration detainer on!" (Doc. No. 5, at 8).  Perhaps this matter will present complicated issues of constitutional law; perhaps not.  It is simply too early to tell.  Therefore, this factor does not weigh in favor of appointing counsel to Asemani.

C.  Although Asemani's Incarceration Hinders His Ability To Perform Factual Investigation, Little Factual Investigation Will Be Necessary

As an inmate, Asemani has limited ability to investigate.  However, Asemani's claim rests largely on events that Asemani purportedly experienced, i.e., a "case management review" in which Asemani supposedly learned that his correctional institution will not reduce his security level / status as long as he is subject to an immigration detainer.  Therefore, extensive factual investigation will not likely be necessary in this matter.  See Abuiz v. Brennan, 443 Fed. App'x 703, 707 (3d Cir. 2011) (affirming district court's denial of counsel, in part because the issues

---

[1]As noted *supra*, this case is still in its infancy.  Defendant has not even filed an Answer.  This makes it difficult to evaluate Tabron factors (2) through (5).  See Chatterjee v. Phila. Fed'n of Teachers, No. 99–4122, 99–4233, 2000 WL 1022979, at *1 (E.D. Pa. July 18, 2000) (noting that "Dr. Chatterjee's claims have barely been articulated; they certainly have not been tested or developed by the general course of litigation, making factors (2)-(5) of Parham's test particularly difficult to evaluate.").

4

"were not dependent on in-depth factual investigation, but instead were primarily based on personal observations made by [plaintiff] himself."); <u>Miles v. Aramark Corr. Serv. at Curran Fromhold Corr. Facility</u>, 236 Fed. App'x 746, 751 (3d Cir. 2007) (affirming district court's denial of counsel, in part because plaintiff's "case was largely the retelling of events that happened in his presence, so. . .he did not need to engage in an extensive investigation."). On balance, this factor is neutral.

D.  Credibility Will Not Be Crucial To This Case

If a case turns on credibility, cross examination of witnesses may be particularly critical, and therefore appointment of counsel may be warranted. <u>Tabron</u>, 6 F.3d at 156. However, we are mindful that it is difficult to imagine a case that does not turn on credibility determinations. <u>Gordon v. Gonzalez</u>, 232 Fed. App'x at 157-58. Therefore, when evaluating this factor, we attempt to discern whether "the case [is] solely a swearing contest." <u>Id.</u>  Here, we doubt this case will turn into a swearing match between Asemani and DHS. Either DHS has placed an immigration detainer on Asemani or it hasn't. In the end, we expect this dispute to center on the law, not the facts. In other words, the critical question will be whether the (alleged) immigration detainer somehow violates Asemani's Equal Protection rights. Credibility will not decide this legal question. Therefore, this factor weighs against appointing counsel.

E.  We Cannot Envision The Need For Expert Testimony In This Case

Given the need to cross examine expert witnesses, appointing counsel may be advisable in cases involving expert testimony. <u>Tabron</u>, 6 F.3d at 156. However, a court need not appoint counsel merely because a case entails expert testimony. <u>Lasko v. Watts</u>, 373 Fed. App'x 196, 201-02 (3d Cir. 2010). Here, Asemani has not alleged any physical injuries, so we foresee no

5

medical expert testimony in this matter.  In fact, at this point in time, we cannot envision either party relying on expert testimony in any respect.  As such, this factor also weighs against appointing counsel to Asemani.

F.  Asemani Is Proceeding IFP And Will Likely Have Difficulty Obtaining Counsel On His Own

The final Tabron factor asks us to consider whether the plaintiff can attain and afford a lawyer on his own.  Like the Third Circuit in Gordon, "[w]e question the independent weight of this factor,. . .as indigent litigants by definition will almost always be able to satisfy it."  Gordon v. Gonzalez, 232 Fed. App'x at 157.  Nevertheless, this factor leans toward granting Asemani's request for pro bono counsel.

G.  The Practical Restraints On Appointing Pro Bono Counsel Remain

The Court recognizes that a *pro se* litigant will have more difficulty pursuing a legal claim than a trained attorney would.  However, as the Third Circuit remarked in Tabron, "we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. . . .We also emphasize that volunteer lawyer time is extremely valuable.  Hence, district courts should not request counsel under § 1915(d) [now subsection (e)] indiscriminately."  Tabron, 6 F.3d at 157.  These substantial barriers to pro bono lawyer appointments remain today.  After carefully considering Asemani's request, using the Tabron framework as a guide, we decline to appoint pro bono counsel in this matter.

6

H.  Conclusion

For the aforementioned reasons, Plaintiff's Motion for Appointment of Counsel (Doc. No. 7) is DENIED, and Plaintiff's Application to Proceed IFP (Doc. No. 8) is DENIED AS MOOT.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.